UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERRANCE HENDERSON,

                Plaintiff,

    v.

GOLDEN CORRAL FRANCHISING SYSTEMS, INC., LANCE TRENARY, ANTHONY SEGRETI, NIRAL PATEL, TD BANK, and JOHN CRAIG,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/23/2021__

19 CV 2878 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Sherrance Henderson ("Plaintiff"), brings this action *pro se* against Golden Corral Franchising Systems, Inc. ("Golden Corral") and others, alleging, *inter alia*, breach of contract and violation of 42 U.S.C. §§ 1981 and 1985 stemming from her endeavors to open and operate a Golden Corral restaurant franchise in Poughkeepsie, New York.[1] Before the Court is Golden Corral's motion to dismiss,[2] which Plaintiff opposed ("Opp'n Aff." (ECF No. 53-5; *accord* ECF Nos. 47-10 and 50)). For the reasons that follow, the Court GRANTS Golden Corral's motion and dismisses Plaintiff's claims against Golden Corral without prejudice for lack of standing.

    Defendants TD Bank and Anthony Segreti also filed motions to dismiss. (ECF Nos. 47 and 48.) In her opposition papers, Plaintiff voluntarily withdrew her claims against these Defendants. (Opp'n Aff. ¶ 3.) Accordingly, TD Bank and Anthony Segreti's motions are DENIED as moot.

---

[1] The Amended Complaint contains causes of action for violations of violations of the Racketeer-Influenced Corrupt Organizations statute ("RICO") and intentional infliction of emotional distress, which Plaintiff withdrew in her affidavit in opposition to the motions to dismiss. (Opp'n Aff. ¶ 4.)

[2] Golden Corral's motion was also filed on behalf of Golden Corral CEO Lance Trenary; however, Plaintiff has voluntarily withdrawn her claims against Trenary. (Opp'n Aff. ¶ 3.) Accordingly, the Court need not address any claims against Trenary.

**BACKGROUND**

The facts herein are drawn from Plaintiff's Amended Complaint ("AC")[3] and Affidavit in Opposition to Golden Corral's motion, and some of the exhibits in support of her original complaint, which Plaintiff cited in the Amended Complaint.[4] The Court "accepts all well-pleaded facts in the Complaint and Supplemental Pleading as true for the purpose of ruling on a motion to dismiss." *Jackson v. NYS Dep't of Labor,* 709 F.Supp.2d 218, 222 (S.D.N.Y. 2010).

**I.     Factual Allegations**

Plaintiff is a disabled African American female with two autistic children. (AC ¶ 2.)

*A.     Franchise Agreement*

On or about March 2013, Golden Corral presented Plaintiff with a written Franchise Disclosure Document ("FDD" or "franchise agreement"). (AC ¶ 6.) Plaintiff alleges that at this time, the Vice President of Franchise Sales asked Plaintiff, on behalf of Golden Corral, whether she was married or had any children and "told/informed/instructed Plaintiff to acquire two other people, preferably men, to share her franchise license with [r]estaurant experience because Plaintiff could not aid in managing the business due to her disability and because she is a woman who has never operated a business of this type." (AC ¶ 8.) Plaintiff further alleges that she signed the FDD without sufficient legal knowledge or advice of counsel (AC ¶ 7 ) and that that because

---

[3] On page 3 of the Amended Complaint, the paragraph numbering inexplicably jumps from 8 to 24. There are no paragraphs numbered 9 through 23.

[4] A court reviewing a motion to dismiss may "consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Additionally, when the Court sua sponte directed Plaintiff to file an amended complaint that complied with Federal Rule of Civil Procedure 8, the Court stated that Plaintiff was not required to reattach her over 200 pages of exhibits to the amended pleading. (ECF No. 5.) Accordingly, the Court has reviewed and cited to certain exhibits Plaintiff appended to her original complaint that were directly referenced in the Amended Complaint.

of the Vice President's instruction, issued Darren "Chip" Joyner and Milton A. Dewar five percent (5%) each of her Golden Corral franchise license, retaining ninety percent (90%) ownership. (*Id.*)

Plaintiff alleges that within the FDD and other written and oral communication, Golden Corral made certain promises regarding training, personnel services, and support that Golden Corral would provide. (Opp'n Aff. ¶ 9).

   B.  *Allegations of Discrimination Prior to Cornucopia Queen Assignment*

On or about September 2014, Plaintiff, Joyner, and Dewar were in an informal meeting with Golden Corral's lead legal counsel who asked Plaintiff why she and Dewar were not married given that they were cohabitating as a common law married couple. (AC ¶ 24.)

On or about May 5, 2016, Plaintiff requested training to become a Golden Corral certified manager and was informed that Golden Corral was not training owners and it would be too difficult for Plaintiff due to her disability and her use of a single prong cane. (AC ¶ 25.)

Plaintiff alleges that between the time Plaintiff entered into the franchise agreement and January 2014, Plaintiff was told by the Senior Vice President of Franchising that Plaintiff could not handle a store in a strip mall because she was a new franchisee, lacked the experience, and her financial status only afforded her to have a "GC-11" store. (AC ¶ 64.) Plaintiff alleges that male franchisees and new owners were offered and have stores in strip malls. (AC ¶ 65.)

Plaintiff further alleges that Golden Corral told her that she had to change her location after she received new franchise/store tax abatements from Newark and Orange, New Jersey. (AC ¶ 65.) Between July and October 2014, Golden Corral again told Plaintiff to pick a different location on Long Island, New York. (AC ¶ 65.) Plaintiff met with the Franchise Area Development Vice President, whose first name was Richard, on an unspecified date and he allegedly told plaintiff that she had to call him "Big Dick" in what he called Plaintiff's "sexy radio voice" if she wanted any area approved for a store. (AC ¶¶ 66-67.)

### C. Assignment to Cornucopia Queen

On or about July 31, 2015, Plaintiff assigned her rights in connection with her Golden Corral Franchise to her "holding company," Cornucopia Queen, Inc. (Opp'n Aff. ¶ 10.) Plaintiff avers that following the assignment, Golden Corral continued to make verbal and written representations and warranties that it would provide training, personnel services and other support. (Opp'n Aff. ¶ 11.) In reliance on these representations, on or about December 22, 2015, Plaintiff personally guaranteed a loan in excess of $3,600,000.00 to Cornucopia Queen, Inc. (Opp'n Aff. ¶ 13.) In addition, Plaintiff personally invested over a million dollars in Cornucopia Queen, Inc. (Opp'n Aff. ¶ 14.)

### D. Poughkeepsie, New York Golden Corral Restaurant

The Poughkeepsie Golden Corral store ("Poughkeepsie Store") was built from raw land at 2345 South Road, Poughkeepsie, New York. (AC ¶¶ 29-30.) It opened in January 2017. (AC ¶ 30.)

On or about February 1, 2017, Plaintiff emailed Golden Corral's Vice President of Franchise Development requesting additional support for the Poughkeepsie Store and he responded by sending 20-year Golden Corral veteran Jaymie Aimalefoa to work with the Poughkeepsie Store. (AC ¶¶ 37-38.) Plaintiff avers that from about February 1, 2017 through March 15, 2017, Aimalefoa "did not offer support . . . . was cynical, distrustful" and gave negative reports regarding Plaintiff and her store to unspecified persons affiliated with Golden Corral. (AC ¶ 39.) She further alleges that Aimalefoa behaved inappropriately by kissing and making romantic gestures to a visiting manager from Connecticut. (AC ¶ 40.) Plaintiff avers that after she confronted Aimalefoa about her inappropriate behavior, Aimalefoa became "hostile and withdrawn." (*Id.*) Plaintiff alleges she later learned that Amimalefoa was making "exaggerated reports" to Golden Corral about the conditions of the Poughkeepsie Store. (AC ¶ 49.) Plaintiff further alleges that

4

after the Poughkeepsie store closed, Aimalefoa was "rewarded" with an owner/operator/General Manager position in North Carolina with a six-figure salary. (AC ¶ 41.)

On or about February 11, 2017, Plaintiff e-mailed Golden Corral requesting help to retrain the staff at the Poughkeepsie Store and complaining about John Craig, Golder Corral's North East Franchise Field Specialist. (AC ¶ 31.) Plaintiff alleges that Craig caused her financial hardship when he directed the kitchen manager to order unnecessary merchandise and to store it in a manner that caused it to spoil and have to be replaced (AC ¶ 32) and directed Plaintiff's store managers to schedule all 144 workers for at least 40 hours (AC ¶ 33). Plaintiff further alleges that Craig sought to undermine Plaintiff's authority by giving his cellphone number to workers and managers and communicating daily with the kitchen manager. (AC ¶¶ 34-36.)

On February 12, 2017, Golden Corral Vice President of Franchise Development allegedly issued a "First and Final Warning" (AC ¶ 48.) Plaintiff attached to her original Complaint a "NOTICE OF DEFAULT AND TERMINATION" dated February 16, 2017 listing various defects and stating that Cornucopia Queen had thirty days to cure them. (ECF No. 2 at 225-26 of 239.)

Plaintiff further alleges that the Poughkeepsie store was "inundated with complaints" from February 4, 2017 through March 21, 2017, which the Division Administrator forwarded to Plaintiff while also "verbally badger[ing] Plaintiff with insults." (AC ¶¶ 43-45.) The Division Administrator informed customers that the Poughkeepsie Store issues refunds even without a receipt and that if Plaintiff did not comply with this policy, the Poughkeepsie Store would be closed down and that the Poughkeepsie Store "was the worst store" and its "sales were the lowest in GC franchise store history." (AC ¶ 44.)

Plaintiff avers that she tried to speak to Golden Corral CEO Lance Trenary, but he refused to speak to her even though she left numerous messages for him. (AC ¶ 46.)

On March 20, 2017 Golden Corral issued Cornucopia Queen a "NOTICE OF DEFAULT AND TERMINATION WITHOUT OPPORTUNITY TO CURE". (*see* ECF No. 2 at 221-24 of 239.) On or about March 28, 2017, Plaintiff, the Kitchen Manager, and the Hospitality Manager went to Golden Corral headquarters in person to speak with Trenary but the Division Administrator told Plaintiff and her colleagues that Trenary was unavailable and that Trenary had already received the information he needed from Craig, Aimalefoa, and others. (AC ¶ 47.)

On March 21, 2017, the Vice President of Franchise Development called Plaintiff and told her that her franchise license was terminated and that the Poughkeepsie Store could not be opened that day. (AC ¶ 51.)

### E.   Additional Post-Assignment Discrimination Allegations

Golden Corral has over 600 stores with over 50,000 hourly workers and, between 2014 and 2017, Plaintiff was Golden Corral's only female, single parent, black franchisee. (AC ¶¶ 60, 69.) Plaintiff alleges that a Golden Corral store in Wallkill/Middletown, New York that opened in 2016 and was closed in 2019 had similar deficiencies as the Poughkeepsie Store and was granted over 300 days to remedy the store issues. (AC ¶ 55.) Plaintiff alleges that the owners of that store are non-black/white. (AC ¶ 56.)

Plaintiff further alleges that a Golden Corral store in Holland, Michigan opened in 2016 and, like the Poughkeepsie Store, had "growing pains" but Golden Corral gave the "white couple" who owned the location 300 days to remedy any issues. (AC ¶ 57.)

A Golden Corral store in Florida owned by a "non-African American, white male" was closed after the department of health observed eighteen live roaches five times but Golden Corral has always allowed this store to reopen. (AC ¶ 58.)

In January 2017, four Golden Corral locations were shut down in Florida due to customer complaints and all of these locations are owned "primarily by white males. (AC ¶ 59.)

## II.     Procedural History

Plaintiff filed this action on March 28, 2019. (ECF No. 2.) Her request to proceed i*n forma pauperis* (ECF No. 1) was granted (ECF No. 4). The Court issued an order directing Plaintiff to file an amended complaint. (ECF No. 5.) Plaintiff filed her Amended Complaint on August 23, 2019. (ECF No. 8.) The Court issued an order of service, directing the U.S. Marshals Service and the Clerk of Court to effect service on Plaintiff's behalf. (ECF No. 13.) Golden Corral moved for leave to file its motion to dismiss (ECF No. 41), which the Court granted (ECF No. 44). Golden Corral's motion (ECF No. 53), which Plaintiff opposed (ECF No. 53-5), is now before the Court.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the

7

complaint, including documents that a pro se litigant attaches to his opposition papers, statements by the plaintiff submitted in response to a defendant's request for a pre-motion conference, and documents that the plaintiff either possessed or knew about and upon which he or she relied in bringing the suit." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018) (internal quotation marks, alterations, and citations omitted). In other words, the Court may "consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

A court must read a pro se complaint liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010). A motion to dismiss a pro se complaint should only be granted if the complaint raises no plausible right to relief under any set of facts the plaintiff could plausibly prove. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A liberal construction of a pro se plaintiff's complaint and submissions is especially important if it includes an allegation of civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Nonetheless, a pro se plaintiff's complaint must plausibly set out entitlement to relief with sufficient factual allegations. *Jackson*, 709 F. Supp. 2d at 224. A court liberally construing a pro se complaint is not required to re-write it or ignore the lack of an element essential to an entitlement to relief. *Geldzahler v. N.Y. Medical Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**DISCUSSION**

**I.     Breach of Contract Claims**

Golden Corral alleges that (1) Plaintiff lacks standing to bring any contract claims in her individual capacity because she assigned her franchise agreement with Golden Corral to another entity that is not a party to this action, and (2) in any event, she fails to plausibly allege a breach of the franchise agreement.

8

The Court agrees with Golden Corral that Plaintiff, as an individual who assigned her franchise rights to a corporation, cannot claim breach of contract since she is no longer individually a party to the contract that was allegedly breached. "An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." *Aaron Feder & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984.) Plaintiff admits that the franchise agreement was assigned to her holding company, Cornucopia Queen, Inc. in 2015, well before the Poughkeepsie Store opened. Plaintiff's breach of contract claims entirely relate to Golden Corral's alleged breach of the franchise agreement by failing to provide various support and training or opportunity to cure alleged deficiencies. (Opp'n Aff. ¶ 10.) Accordingly, by assigning her rights to Cornucopia Queen, Plaintiff lost any rights as a party to the franchise agreement in her individual capacity.

Relatedly, Plaintiff fails to assert third-party beneficiary rights to enforce the franchise agreement. To plead such rights, a plaintiff must plausibly allege "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [her] benefit and (3) that the benefit to [her] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006). The Complaint is bereft of any allegations indicating that the contract between Cornucopia Queen and Golden Corral was intended for Plaintiff's benefit. Accordingly, even read liberally, Plaintiff has failed assert a third-party beneficiary right under the franchise agreement.

To the extent that Plaintiff believes that as the President of Cornucopia Queen, she can pursue a breach of contract claim on Cornucopia Queen's behalf, she is mistaken. "Under New York law, where a party to a contract signs the document only in his capacity as corporate officer,

[s]he may not maintain an action on the contract in h[er] individual capacity." *Kirby v. Coastal Sales Ass'n, Inc.,* 82 F. Supp. 2d 193, 197 (S.D.N.Y. 2000). In other words, "[a]n individual lacks standing to bring claims for breach of contract where injuries to the individual 'were indirectly caused by harm to [a business organization] and therefore are not distinct'" from injuries to the business. *Russell Pub. Grp., Ltd. v. Brown Printing Co.*, No. 13 CIV. 5193 SAS, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014) (quoting *Caravella v. City of New York*, 79 F. App'x 452, 453 (2d Cir. 2003) (affirming dismissal of breach of contract claim for lack of standing where corporation, not plaintiff, was party to the contract)).

If Plaintiff seeks to pursue contract claims on Cornucopia Queen's behalf, she cannot do so in her individual capacity; instead, she must retain an attorney and name Cornucopia Queen as the plaintiff. *See Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009) (explaining that "a layperson may not represent a corporation of which he is the sole shareholder, a limited liability company of which he is the sole member, a partnership in which he is a partner, [or] a co-party in the litigation . . ."); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[s]ole shareholders of corporations are not allowed to represent such corporations *pro se*"); *see also Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) (holding that district court did nor err in directing plaintiff that if he wanted to pursue claims, some of which belonged to a corporation, he needed to " file an amended complaint, through counsel, naming the proper corporate entity as plaintiff"). "The reasons for requiring that a party, unless exercising his constitutional right to represent himself, be represented by an attorney are principally that the conduct of litigation by a non-attorney creates unusual burdens for his adversaries and the court, as well as for the party he would represent." *Berrios*, 564 F.3d at 133.

In sum, the Court must dismiss Plaintiff's breach of contract claims against Golden Corral because she lacks standing to bring them.

## II. Discrimination Claims

The Fourth Cause of Action in Plaintiff's Amended Complaint is for "Violations of 42 U.S.C. §§ 181 and 1985." (AC ¶¶ 86-93.) Golden Corral's memorandum in support of its motion to dismiss avers only that Plaintiff has failed to state a conspiracy claim under Section 1985.[5] Because Plaintiff is *pro se* and the Court is dismissing Plaintiff's claims without prejudice, it also sua sponte analyzes the sufficiency of the Section 1981 claim even if Defendant failed to properly raise it.

Plaintiff alleges that Golden Corral discriminated against her on the basis of her "race and gender and by disparately treating her compared to white and male franchisees." (AC ¶ 91.)

---

[5] Plaintiff also attempts to allege that Golden Corral discriminated against her because of her disability and/or gender. Sections 1981 and 1985 do not apply to disability discrimination. *See, e.g.*, *Runyon v. McCrary*, 427 U.S. 160, 167 (1976) ("42 U.S.C. §1981 is in no way addressed to" gender as a "category[y] of selectivity"). Additionally, Plaintiff has not stated an independent claim for disability discrimination. Employment claims under Title VII, which does cover gender-based discrimination, require, *inter alia*, administrative exhaustion by filing of a complaint with the Equal Employment Opportunity Commission within 300 days of the alleged discrimination and Plaintiff has not alleged either that she filed such a claim or that, pursuant to the franchise agreement, Golden Corral was her "employer" for purposes of the federal employment discrimination statutes. *See, e.g. DiPilato v. 7-Eleven, Inc.*, 662 F.Supp.2d 333, 347-48 (S.D.N.Y. 2009) ("Because the relationship of 7-Eleven franchisees to 7-Eleven is that of an independent contractor, Plaintiff [who is a franchisee] cannot be an employee for the purposes of Title VII . . .").
Similarly, Plaintiff avers in her opposition papers that she has alleged facts sufficient to "support plausible causes of action including detrimental reliance, fraud, [and] fraud in the inducement" (Opp'n Aff. ¶ 16) even though Plaintiff has not stated causes of action or alleged facts sufficient to state such claims. Even liberally construed, Plaintiff has not alleged facts that come close to meeting the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applicable to fraud claims and, in any event, any claim the Golden Corral failed to provide promised training or support, thereby undermining the Poughkeepsie Store's ability to succeed, sounds in breach of contract, not fraud. *See Stewart v. Jackson & Nash*,976 F.2d 86, 89 (2d Cir. 1992) (explaining that "[m]ere promissory statements as to what will be done in the future are not actionable" as fraudulent inducement claims).

11

However, as with the breach of contract claim, Plaintiff's allegations of discrimination largely relate to alleged mistreatment by Golden Corral of the Poughkeepsie Store after Plaintiff's franchise rights were assigned to Cornucopia Queen—including failure to provide promised support or training and failure to provide an opportunity to cure defects before closing the store, mistreatment that she alleges she suffered in part because the Poughkeepsie Store was owner and/or operated by a disabled black woman—and therefore any injuries Plaintiff suffered were through the corporation. While a corporation may raise a race discrimination claim under Section 1981, *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 473 n. 1 (2006) (recognizing that "the Courts of Appeals to have considered the issue have concluded that corporations may raise [42 U.S.C.] § 1981 claims" for injuries due to race discrimination), "a plaintiff cannot state a claim under § 1981 unless [s]he has . . . rights under the existing (or proposed) contract that he wishes 'to make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's," *id.* at 479-80 (holding that plaintiff, a black man who was sole shareholder and president of corporation, could not state a claim against defendant because corporation and not plaintiff individually was the party that contracted with defendant and rejecting plaintiff's proposal that "[a]ny person who is an 'actual target' of discrimination, and who loses some benefit that would otherwise have inured to him had a contract not been impaired, may bring a suit" (quotation mark omitted)).

As with the breach of contract claims, the harms from the race discrimination alleged are to the franchisee, Cornucopia Queen, and not to Plaintiff individually, so Plaintiff lacks standing to bring them in her individual capacity and without legal representation.

**III.     Claims Against Non-Appearing Defendants Patel and Craig**

The Amended Complaint also names Niral Patel and John Craig. The Court granted Plaintiff an extension through November 16, 2020 to serve Defendants Niral Patel and John Craig. (ECF No. 40.) On January 7, 2021, Plaintiff filed a letter requesting a further extension to serve Niral Patel. (ECF No. 46.) On January 27, 2021, Plaintiff filed an affidavit of service of Summons and Amended Complaint on Niral Patel stating that this Defendant was served by mail on January 18, 2021.[6] (ECF No. 54.) Patel has not appeared. Additionally, it appears that Craig was never served. The Court *sua sponte* dismisses the claims against Patel and Craig pursuant to Federal Rule of Civil Procedure 4(m) because Plaintiff failed to timely serve them. *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) (confirming that district court's dismissal under Rule 4(m) is discretionary).

## CONCLUSION

For the foregoing reasons, Golden Corral's motion to dismiss is GRANTED and Plaintiff's claims are dismissed without prejudice for lack of standing. If Plaintiff wishes to pursue claims against Golden Corral on behalf of Cornucopia Queen consistent with this opinion, she may file a second amended complaint, through counsel, naming Cornucopia Queen as plaintiff on or before November 8, 2021. If Plaintiff needs additional time to retain counsel and file the second amended complaint, she must write the Court requesting an extension of the November 8, 2021 deadline, specifying how much additional time she needs, and why she needs that much time. Pursuant to Plaintiff's opposition papers, Plaintiff has withdrawn her claims against TD Bank, Segreti, and Trenary, so their motions are dismissed as moot.

---

[6] The Certificate of Service further indicates that Patel was unable to be served by affixing because deponent was unable to find the proper or authorized person to be served at Patel's actual place of business or dwelling after deponent called that location on January 12, 13, 16, and 18, 2021. (ECF No. 54.)

The Clerk of the Court is respectfully directed to (1) terminate the motions at ECF Nos. 47, 48, and 53, (2) terminate Defendants TD Bank, Segreti, Trenary, Patel, and Craig; (3) mail a copy of this Opinion and Order to pro se Plaintiff at the address listed on ECF, and (4) show service on the docket.

Dated: September 23, 2021  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge