USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/7/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORNUCOPIA QUEEN, INC.,

                            Plaintiffs,

        -against-

GOLDEN CORRAL FRANCHISING SYSTEMS,
INC.,
                            Defendant.

7:19-CV-2878 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Cornucopia Queen Inc. (the "Plaintiff" or "Cornucopia") brings this action under 42 U.S.C. § 1981, against Golden Corral Franchising Systems, Inc. (the "Defendant" or "Golden Corral") asserting a claim of racial discrimination due to, *inter alia*, allegedly receiving disparate treatment compared to other similarly situated groups.

Presently before the Court is Defendant's motion for summary judgment (the "Motion") (ECF No. 121.) Defendant seeks summary judgment on Plaintiff's claim of racial discrimination for failure to raise an inference of intentional racial discrimination or, in the alternative, for failure to demonstrate that Defendant's legitimate business reasons were pretext. For the following reasons, the Court GRANTS Defendant's motion for summary judgment.

## PROCEDURAL BACKGROUND

On March 28, 2019, Plaintiff Sherrance Henderson commenced this action against Golden Corral and several other parties associated with Golden Corral. (ECF No. 2.) On April 12, 2019, her request to proceed *in forma pauperis* was granted. The Court issued an order directing Plaintiff Henderson to file an amended complaint. (ECF No. 5.) Plaintiff Henderson filed her Amended Complaint on August 23, 2019. (ECF No. 8.) On January 15, 2021, Golden

Corral filed a motion to dismiss. (ECF No. 49.) In her opposition to this motion, Plaintiff

Henderson withdrew her claims against Defendants Lance Trenary, Anthony Segreti, Niral Patel,

TD Bank, and John Craig. (ECF No. 50.) The Court granted Golden Corral's motion to dismiss,

dismissing Plaintiff's claims without prejudice for lack of standing ("*Golden Corral I*"). (ECF

No. 59.) On January 18, 2022, Plaintiff Henderson filed the Second Amended Complaint,

naming herself and Cornucopia as plaintiffs. (ECF No. 64.) Another round of briefing related to

a motion to dismiss then followed, which the Court granted in part and denied in part in its

March 21, 2023 decision ("*Golden Corral II*"). (ECF No. 78.) In *Golden Corral II*, the Court

dismissed Plaintiff Henderson's claims for violation of 42 U.S.C. § 1981, breach of contract,

breach of the implied covenant of good faith and fair dealing, fraudulent inducement and

fraudulent omission, and punitive damages with prejudice. The Court then terminated Plaintiff

Henderson from the action because none of her claims as an individual plaintiff remained. The

Court also dismissed Plaintiff Cornucopia's claims for breach of contract, breach of the implied

covenant of good faith and fair dealing, and fraudulent inducement and fraudulent omission with

prejudice. The Court denied Defendant's motion to dismiss with respect to Plaintiff

Cornucopia's claims for violation of racial discrimination under 42 U.S.C. § 1981 and punitive

damages, which are the only claims that now remain.

On January 6, 2025, Defendant moved for summary judgment on Plaintiff Cornucopia's

claim of racial discrimination under 42 U.S.C. § 1981 and for punitive damages. (ECF No. 121.)

On January 6, 2025, Defendant filed a Memorandum of Law in Support of its Motion ("MoL")

(ECF No. 122) along with an accompanying Statement of Material Facts pursuant to Local Rule

56.1 ("Def.'s 56.1") (ECF No. 123) and a Reply Memorandum of Law ("Reply"). (ECF No.

127.) On the same day, Plaintiff Cornucopia filed its own Memorandum of Law in Opposition

("Opp.") (ECF No. 131) as well as a response to Defendant's 56.1 (ECF No. 132) and its own Statement of Material Facts pursuant to Local Rule 56.1 (ECF No. 133.) On June 10, 2025, the Court issued an Order notifying Plaintiff Cornucopia that its 56.1 Statement was deficient because it did not provide proper citations to the evidence as required by Rule 56.1. The Court allowed Plaintiff an opportunity to cure its deficiencies, which Plaintiff did by filing a Supplemental Statement of Material Facts on June 12, 2025 ("Pltf.'s 56.1"). (ECF No. 136.)

## BACKGROUND

Sherrance Henderson is a black woman who entered into a franchisee agreement with Golden Corral that allowed her to open a Golden Corral restaurant. (Def.'s 56.1 ¶¶ 2-4.) Henderson claims to be the only black female owner of a Golden Corral franchise. (Pltf.'s ¶ 80.) Henderson assigned her interest in her franchisee agreement to Plaintiff Cornucopia. (Def.'s 56.1 ¶ 6.) Plaintiff Cornucopia then became the franchisee of Golden Corral. (Def.'s 56.1 ¶ 1.) The parties agreed to construct a building in Poughkeepsie, New York, which would serve as the restaurant location for the new franchise that Plaintiff would operate. (Def.'s 56.1 ¶ 5.) Henderson maintains that she did not want to operate a franchise in Poughkeepsie but instead wanted to operate a franchise in Newark where she had more connections and where the local demographic was majority minority. (Pltf.'s 56.1 ¶¶ 77, 78, 81.)

Prior to the opening of the restaurant, Golden Corral claims that it arranged for Henderson to receive training on how to successfully operate the franchise. (Def.'s 56.1 ¶ 8.) Plaintiff disputes that there was any provided training prior to opening and that "training was supposed to be provided by Golden Corral along the way" but that it was not. (Pltf.'s 56.1 ¶¶ 18-19.) Plaintiff's Golden Corral franchised opened in January of 2017. (Def.'s 56.1 ¶ 5.) Shortly after opening, Plaintiff's franchise ran into operational issues and received negative customer

3

feedback that eventually totaled more than 100 customer complaints. (Def.'s 56.1 ¶¶ 30-34.) The Division President of Golden Corral responsible for Plaintiff's franchise, David Webb, testified that he "had never had so many complaints on a store in my life." (Def.'s 56.1 ¶¶ 29-30.) Approximately 50 days after opening, a Food Safety Audit was conducted by EcoSure, a vendor that Golden Corral engages to review and inspect Golden Corral locations. (Def.'s 56.1 ¶ 50.) EcoSure found 16 critical violations and 28 total violations. (*Id*.) Golden Corral also conducted its own audit report in a "Pleasurable Dining Experience" report. (Def.'s 56.1 ¶ 52.) Plaintiff received a score of 257 out of a possible 500 points. (*Id*.) On February 13, 2017, David Webb sent a letter to Henderson detailing the many problems that Golden Corral had identified with Plaintiff's franchise. (Def.'s 56.1 ¶ 61.) Webb also noted in his letter that it had been made clear that the systems Golden Corral had put in place to facilitate and train Plaintiff's franchise "weren't being followed and that they weren't going to be followed." (Def.'s 56.1 ¶ 64.) On February 16, 2017, Plaintiff received another letter from Golden Corral Assistant General Counsel, Chappell Phillips, in the form of a notice of default that advised Plaintiff of a series of payment defaults under the terms of the Franchise Agreement and that "further default under the Franchise Agreement may result in termination without the opportunity to cure." (Def.'s 56.1 ¶ 69.) On March 20, 2017, Phillips sent another letter to Plaintiff that terminated the franchise agreement without an opportunity to cure due to Plaintiff's continued defaults under the franchise agreement. (Def.'s 56.1 ¶ 70.) These defaults included Plaintiff's failure to maintain the required number of certified management staff, failure to meet Golden Corral's operating standards (*e.g.*, failing to maintain sufficient supply, failing to purchase supplies from approved sources), failure to make payments on time as required under the franchise agreement. (Def.'s Ex. N.) This letter also made note of Plaintiff's customer complaints, the low pleasurable dining

4

score, and the results of the EcoSure audit, which were unacceptable to Golden Corral. (*Id.*) Golden Corral maintains that this decision was not taken lightly and was only made in consideration of stakeholders' interest. (Def.'s 56.1 ¶ 65.) Moreover, Golden Corral states that it has no economic interest in terminating franchises and that they are only done when necessary to protect the brand. (Def.'s 56.1 ¶ 67.) Golden Corral claims that it provided "significantly more pre- and post-opening support and assistance to [Plaintiff] than it typically provides for other franchisees" and yet Plaintiff's defaults and deficiencies persisted, which necessitated the closure. (Def.'s 56.1 ¶ 63.)

Plaintiff, however, disputes that it was provided meaningful support and claims that when Henderson pleaded for assistance, she was not only ignored but she was admonished for asking. (Pltf.'s 56.1 ¶ 100.) Further, Plaintiff claims that other non-minority franchises were allowed to cure their defaults while Plaintiff was not. (Pltf.'s 56.1 ¶ 96.) And that Plaintiff's franchise was the only franchise to be closed in 56 days. (Pltf.'s 56.1 ¶ 41.) Plaintiff also claims that she was never given a legitimate business reason for why she was not allowed to franchise in Newark as initially requested. (Pltf.'s 56.1 ¶ 98.) Plaintiff argues that, from the above interactions, the franchise agreement was terminated due to Henderson's race as a black woman and not for legitimate business reasons. (Pltf.'s 56.1 ¶ 97.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the

outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original). At the summary judgment stage, "it is undoubtedly the duty of district courts not to weigh the credibility of the parties." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005). A court may rely on a Plaintiff's testimony alone to raise an issue of material fact during summary judgment so long as the "testimony was not contradictory or rife with inconsistencies such that it was facially implausible." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).

**DISCUSSION**

## I.    Section 1981 Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). As a result, Section 1981 protects a plaintiff's right to enjoy "all of the benefits, privileges, terms and conditions" of his or her employment contracts. 42 U.S.C. § 1981(b). When, as here, a Section 1981 claim is based upon circumstantial evidence of discrimination, the claim is reviewed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).[1] Under *McDonnell*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The burden in presenting a *prima facie* case of discriminatory treatment is minimal. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). That said, a plaintiff is still required to identify circumstances that give rise to discrimination on the basis of race. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). And that the alleged discrimination was intentional. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001). Though not required, one such way is to show that other similarly situated people were not subject to the same discriminatory treatment. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001). If a plaintiff can succeed in making such a showing, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons that motivated the allegedly discriminatory action. *See McPherson*, 457 F.3d at 215–16. The defendant need only produce legitimate, non-

---

[1] Plaintiff admits in its papers that there is no direct evidence of discrimination alleged and that this case proceeds based only on circumstantial evidence. *See* Opp. at 11. ("Where, as here, a plaintiff does not allege any direct evidence of discrimination, she may proceed under the well-established burden-shifting framework the Supreme Court developed in *McDonnell*.")

discriminatory reasons—they are not required to be persuasive. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, (2000). "If the defendant satisfies its burden of production, then the presumption of discrimination 'simply drops out of the picture.'" *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328 (S.D.N.Y. 2001) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993). The burden then shifts back to the plaintiff to demonstrate that the legitimate reasons offered are pretextual. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 350 (S.D.N.Y. 2006) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). "While courts are to be 'particularly cautious' about granting summary judgement to employers in cases where the discriminatory intent of the employer is contested '[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Id.* (quoting *Abdu–Brisson*, 239 F.3d at 466) (internal citations omitted). "Courts are not to treat discrimination differently from other ultimate questions of fact." *Id.*

### A. Discriminatory Treatment

Plaintiff provides six bases for its claim of racial discrimination: (1) Plaintiff was not allowed to franchise in Newark, which is majority minority and Plaintiff's preferred location of operation; (2) Henderson was Golden Corral's only female black franchisee; (3) Golden Corral did not provide proper training to Plaintiff; (4) Golden Corral did not assist Plaintiff when it encountered operational difficulties; (5) Plaintiff was not provided opportunities to cure deficiencies while other non-minority franchisees were allowed to do so; and (6) Plaintiff's franchise agreement was terminated in 56 days. (*See* SAC ¶ 176) *see also* Opp. at 19-20. The Court will address each in turn.

First, Plaintiff alleges that Henderson was not allowed to franchise in Newark, which she believes was "based on race." (Pltf.'s 56.1 ¶ 97.) There are several problems with this as a basis

for racial discrimination. For starters, it makes little sense for Defendant to refuse a black woman a franchise in one location because of race but then proceed to contract with the same black woman in a different location. Moreover, Plaintiff claims that Henderson was never offered a legitimate business reason why she was not permitted to develop and open a restaurant in Newark. (Pltf.'s 56.1 ¶ 98). Defendant is under no such burden and Plaintiff has not provided any basis for her belief that this decision was due to race beyond her own feelings and perceptions, which is insufficient as a matter of law. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) (concluding that "feelings and perceptions of being discriminated against are not evidence of discrimination"). Further, Henderson's theory on this point is inconsistent. In her deposition testimony, Henderson testified that Golden Corral wanted to "[h]ave an investor to build a store from ground up, a store that they wanted, a store type that they wanted, and they would basically have the opportunity to have a store built not at their cost." (Pltf.'s Ex. P. at 88.) But this would be an economic reason and not a race-based reason for denying Plaintiff the opportunity to build in Newark. And finally, not allowing Plaintiff to franchise in a particular location before the signing of the franchise agreement in no way supports an argument that racial discrimination was the basis for the termination of the franchise agreement, which is the ultimate question before the Court.

Second, Plaintiff claims that Henderson was Golden Corral's only black female franchisee, and that Golden Corral was not supportive of her as a basis for Plaintiff's claim of discrimination. (Pltf.'s 56.1 ¶ 80.) Plaintiff points to Henderson's deposition testimony as support. (Pltf.'s Ex. P. at 84.) But Henderson's deposition testimony cuts the other way. Henderson did not testify that she was the only black female franchisee but that she was the only black *disabled* woman franchisee owner. (*Id.*) Further, Henderson was asked during her

9

deposition "there were other African-American franchise owners?" (*Id.*) To which Henderson

replied, "yes." (*Id.*) Henderson was then asked, "there were other African-American franchise

owners who were women that you're aware of?" (*Id.*) Henderson replied, "when you say

'women,' there was a group." (*Id.*) Plaintiff's counsel seems to confuse the law by trying to

argue this as a basis for a Section 1981 claim. Section 1981 only applies to claims of racial

discrimination. Claims of gender or disability discrimination are not applicable for purposes of a

Section 1981 claim. The only relevant inquiry would be whether (1) Henderson was the only

black franchisee and (2) that she was treated differently on this basis.[2] There is no evidence of

either. There were other black franchisee owners and there is no evidence that they were treated

differently from non-minority franchisees. And Henderson's personal feelings of not being

supported do not raise an inference of discrimination as a matter of law. *See Bickerstaff*, 196

F.3d at 456.

Third, Plaintiff claims that it was not provided with proper training prior to opening while

other franchisees were. There is a dispute in the record about the level of training that was owed

to Plaintiff. But this dispute is not material. Plaintiff claims that franchise owners were required

to have an operations manager and certified managers who had gone through extensive 12-week

training. (Pltf.'s 56.1 ¶¶ 15-16.) Moreover, the training process related to the restaurant's

opening was supposed to be between six months and two years. (Pltf.'s 56.1 ¶ 42.) Plaintiff

claims that coaching and training was bypassed at its restaurant and that the restaurant opened

anyway with training to occur "along the way." (Pltf.'s 56.1 ¶¶ 18-19.) On the other side of the

aisle, Defendant claims that they arranged for "Henderson, who would be running the

---

[2] Being the only black franchisee is not required for this inquiry, but the Court understands Plaintiff as trying to assert that Henderson was the only black franchisee to prove that Golden Corral has a history and pattern of racial discrimination that is evidenced by a lack of contracting and working with black franchisee owners.

Restaurant, to train with Elri Parker, a Golden Corral franchise owner in Dothan, Alabama."
(Def.'s 56.1 ¶ 8.) Further, Defendant claims that Golden Corral "assigned 'corporate training team,' dubbed the 'A Team' to work with Henderson and her staff for 'close to a month.'" (Def.'s 56.1 ¶ 17.) And that various members of Henderson's staff received training or had extensive experience in the restaurant industry. (Def.'s 56.1 ¶¶ 10, 15.) But this is immaterial because the appropriate training being provided or not in no way raises an inference of racial discrimination. There is no evidence in the record that indicates that, assuming training was inadequate, that it was intentionally made so due to Henderson's race. The record is barren of any facts that suggest as much besides Plaintiff's conclusory statements that it was denied training on the basis of race. This, without more, is insufficient. *See Drayton v. Toys "R' Us Inc.*, 645 F. Supp. 2d 149, 161–62 (S.D.N.Y. 2009) (noting that Plaintiff citing to mistreatment and then asking the court to conclude that it must have been related to his race is not sufficient for a Section 1981 claim.)

Fourth, Plaintiff claims that she was not provided assistance despite her pleas for help to Golden Corral. Similarly, there is a dispute between the parties on whether assistance was provided or not. Plaintiff claims that her pleas for help were not only ignored but that she was admonished for asking. (Pltf.'s 56.1 ¶ 100.) Defendant, on the other hand, claims that Golden Corral provided more pre- and post-opening support than they did for other franchisees. (Def.'s 56.1 ¶ 63.) But again, this basis for discrimination fails because there is no evidence to support that this lack of support was due to Henderson's race. Plaintiff, again, points to some purported mistreatment and asks the Court to conclude that it was due to race. That will not do. *See Id.*

Fifth, Plaintiff claims that it was not allowed an opportunity to cure its deficiencies while other non-minority franchisees were allowed to do so. (Pltf.'s 56.1 ¶ 28.) As mentioned *supra*,

this is one of the most common ways to establish discrimination for purposes of a Section 1981 claim. The Court allowed this claim to survive on a motion to dismiss because, at that stage, the Court was required to take Plaintiff's factual assertions as true. Plaintiff alleged that non-minority franchisees owners in Florida, including Cape Coral, Florida City, Pompano Beach, Royal Palm, and Palatka, Florida; Middleton, New York, and Holland, Michigan were treated differently than Plaintiff. But at this stage, Plaintiff must provide the Court with facts that can be presented in a form that would be admissible as evidence. *See* Fed. R. Civ. P. 56(c). Plaintiff has failed to do so. Defendant has brought to the Court's attention that during discovery, Plaintiff was served with an interrogatory requesting that Plaintiff identify non-minority franchisees that were treated differently than Plaintiff, which Plaintiff objected to. (*See* Pltf.'s Ex. P.) Plaintiff was then served with a subsequent interrogatory requesting additional information about these non-minority franchisees. But Plaintiff offered only sparse facts about franchisees from Michigan and Florida owned by "Nadine Harris" and "Eric Holmes," respectively. (*See* Pltf.'s Ex. O.) Plaintiff was further pressed on producing documents and communications that shed additional light on these non-minority franchisees. But in response, Plaintiff could only offer a handful of media articles. (*See* Pltf.'s Ex. Q.) Plaintiff's evidence for these non-minority franchisees receiving disparate treatment are not in admissible form as required. And even if it were, the facts offered by Plaintiff provide the Court with no ability to determine if these non-minority franchisees were, in fact, similarly situated. There is no information about the size of the franchisees, the local market, the deficiencies at issue, the time allowed to cure, the volume of customer complaints, the result of any audits conducted at these franchisees, the willingness for these franchisees to adjust their practices, the relationship between Golden Corral and the franchisees, etc.

Plaintiff Henderson's deposition testimony reveals much the same on this point. Henderson testified "[t]here was a Holland, Michigan, store that was opened up. I don't remember her name … she had similar growing pains … it was rumored that she had [health violations]." (Pltf.'s Ex. P at 192-93.) When asked how she knew that the Michigan location was allowed to cure their deficiencies, Henderson testified that it was "it was all in the news." (*Id.* at 194.) Henderson was asked how she knew the Michigan location had a default, Henderson replied "I don't know." (*Id.*) And with respect to Florida, when Henderson was asked what the franchisee's name was, Henderson testified "I don't. But you can Google … it was in the news." (*Id*.) Plaintiff provides the Court with a "ketchup bottle of an argument: it looks full at first glance, but it is surpassingly difficult to get anything out of it." *Royal v. Leading Edge Prods.*, Inc., 833 F.2d 1, 2 (1st Cir. 1987). At this stage, the Court cannot accept this sort of argument as a basis for a Section 1981 claim.

And finally, Plaintiff claims that its franchise agreement being terminated in 56 days is proof of racial discrimination. This, too, indicates nothing about race. Even if the Court were to view this in the light most favorable to Plaintiff, it would still not speak to Plaintiff's race being the motivation for the termination of the franchise agreement. This can be proof of Plaintiff's failure to properly run the business, a breakdown in the relationship between Golden Corral and Plaintiff due to differences in personality or differences in their understanding of the how the business operation would function at the time of signing, or because Golden Corral lost faith in Plaintiff's ability to operate the franchise, or any other number of possibilities. But there is nothing from this fact alone, or in conjunction with the other proffered bases, that indicates that the termination of the franchise agreement within 56 days was because of Plaintiff's race. Accordingly, Plaintiff has failed to raise any inference of racial discrimination.

### B. Legitimate, Non-discriminatory Reasons

Even if the Court were to find that Plaintiff had raised an inference of racial discrimination, Defendant offered the Court legitimate, non-discriminatory reasons for the franchise agreement termination. Under *McDonnell*, once a Plaintiff has raised an inference of racial discrimination, the burden shifts to Defendant to produce legitimate, non-discriminatory reasons for the allegedly discriminatory action. Defendant's burden is not one of persuasion but of production. *See Reeves*, 530 U.S. at 142. Here, Defendant has offered multiple legitimate, non-discriminatory reasons for termination of the franchise agreement. Defendant has provided the Court with evidence that Plaintiff had a large volume of customer complaints, an EcoSure audit that identified multiple violations (some deemed critical), a Pleasurable Dining Experience audit that resulted in a low score, and multiple violations and defaults of the franchise agreement that allowed Golden Corral to terminate the franchise agreement. Moreover, Defendant has provided the Court with evidence that the relationship between Golden Corral broke down to the point where Golden Corral no longer had any faith in Defendant to properly and successfully operate the franchise such that Golden Corral's brand image would not suffer if allowed to continue. Accordingly, Defendant has produced legitimate, non-discriminatory reasons for the termination.

### C. Pretext

Under *McDonnell*, if the Defendant can produce legitimate, non-discriminatory reasons for the allegedly discriminatory action, the burden shifts back to Plaintiff to show that these purportedly legitimate, non-discriminatory reasons are mere pretext. Plaintiff fails to provide the Court with any evidence or coherent argument that they are. Plaintiff only offers the Court statements such as the notice of default was an "unprecedented notice without the opportunity to

cure." (Pltf.'s 56.1 ¶ 124.) And that Plaintiff was never provided a legitimate business reason why she was not permitted to develop and open a restaurant in Newark. (Pltf.'s 56.1 ¶ 98). None of which go to the issue of whether Defendant's proffered reasons for the franchise agreement termination were pretextual. Accordingly, Plaintiff has failed to satisfy their burden of demonstrating Defendant's legitimate, non-discriminatory reasons are mere pretext.

## II.    Punitive Damages

Because the Court has found that Defendant is entitled to summary judgment on Plaintiff's Section 1981 claim, there are no surviving claims to which punitive damages can attach. *See Virgilio v. City of New York*, 407 F.3d 105, 117 (2d Cir. 2005). Accordingly, Plaintiff's claim of punitive damages is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Plaintiff has failed to provide the Court with any evidence of intentional racial discrimination sufficient to satisfy a Section 1981 claim. Moreover, Defendant has offered the Court legitimate, non-discriminatory reasons for its allegedly discriminatory actions that Plaintiff has failed to rebut. Because Plaintiff's Section 1981 claim is dismissed, Plaintiff's claim for punitive damages is also necessarily dismissed. The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff, terminate the motion at ECF No. 121 and to terminate the action.

SO ORDERED.

Dated:    July 7, 2025
          White Plains, New York

_____
        NELSON S. ROMÁN
        United States District Judge